## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **ALLAN ASKRENS, ROBERT L. BENNETT,** and **SHAWN BOSCHERT,** on behalf of themselves and all others similarly situated, | Case No. 3:25-cv-00008-S |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| **PALLET LOGISTICS OF AMERICA, LLC, d/b/a PLA,** | |
| Defendant. | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Allan Askrens, Robert L. Bennett, and Shawn Boschert ("Plaintiffs"), bring this Consolidated Class Action Complaint ("Complaint") on behalf of themselves and all others similarly situated (the "Class Members"), against Defendant Pallet Logistics of America, LLC, d/b/a PLA ("Defendant" or "PLA"). The allegations set forth in this Complaint are based on Plaintiffs' personal knowledge as to their own actions and experiences, upon information and belief, and the investigation of counsel.

## NATURE OF CASE

1.      Defendant "is a leading provider of recycled pallets and pallet management services, handling more than 40 million pallets per year for over 500 customers."[1]

2.      This action arises from a recent data breach (the "Data Breach") impacting highly

---

[1] *See* Reusable Packaging Assoc., *Pallet Logistics of America*, https://reusables.org/reusables-marketplace/pallet-logistics-of-america (last accessed Jan. 31, 2025).

sensitive employee data and personally identifying information ("PII")[2] (referred to herein as "Private Information"), including Social Security numbers, in Defendant's possession, belonging to Plaintiffs and Class Members.

3.      The Data Breach occurred as a result of Defendant's failure to implement reasonable data security practices.

4.      Plaintiffs bring this action on behalf of themselves and all others whose Private Information was compromised due to Defendant's failures.

5.      Plaintiffs and Class Members have suffered injuries because of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

---

[2] Personally identifiable information ("PII") generally incorporates information that can be used to  distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its  face expressly identifies an individual. PII also is generally defined to include certain identifiers  that do not on its face name an individual, but that are considered to be particularly sensitive  and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

6.      Plaintiffs bring this action on behalf of themselves and all others similarly situated to remedy these harms and prevent a data breach of this nature from happening again.

## THE PARTIES

*Plaintiff Allan Askrens*

7.      Plaintiff Allan Askrens is and has been, at all relevant times, a resident and citizen of Bartlesville, Oklahoma. Plaintiff Askrens received the Notice Letter, via U.S. mail, from Defendant, dated November 12, 2024.

*Plaintiff Robert L. Bennett*

8.      Plaintiff Robert L. Bennett is and has been, at all relevant times, a resident and citizen of Hemet, California. Plaintiff Bennett received the Notice Letter, via U.S. mail, from Defendant, dated November 12, 2024.

*Plaintiff Shawn Boschert*

9.      Plaintiff Shawn Boschert is and has been, at all relevant times, a resident and citizen of Fernley, Nevada. Plaintiff Boschert received a Notice Letter, via U.S. mail, from Defendant, dated November 12, 2024.

*Defendant PLA*

10.      Defendant PLA is a Delaware corporation with its principal place of business located at 3030 Beltline Road, Suite 650, Addison, Texas, 75001. Defendant "provides new and recycled pallets and logistics solutions to manufacturers and retailers across Texas, Oklahoma, New Mexico, Colorado, Kansas, Missouri, Arkansas, Louisiana, and Mississippi" from locations in Dallas, San Antonio, Hutchins, and Houston, TX and Oklahoma City, OK.[3]

---

[3] *See*, *Pallet Logistics of America*, https://www.plasolutions.com/pallet-logistics-of-america (last accessed Jan. 31, 2025).

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiffs and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant; there are more than 100 putative Class Members; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12.     This Court has general personal jurisdiction over Defendant because it operates and maintains its principal place of business in this District, regularly conducts business in Texas, and has sufficient minimum contacts in Texas. Defendant intentionally availed itself of this jurisdiction by conducting business and employing persons within this District.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is located in this District, Defendant maintains Class Members' Private Information in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Defendant Pallet Logistics of America, LLC*

14.     Defendant is a limited liability company that provides pallets and logistics solutions. As a condition of employment, Defendant requires its prospective and current/former employees to provide their Private Information, including Social Security numbers.

15.     Upon information and belief, Defendant requires its job applicants and employees to provide it with their sensitive Private Information as a condition of seeking and maintaining employment. Without this, Defendant would be unable to perform its regular business activities. Defendant retains this information even after the relationship has ended.

16.     Upon information and belief, Defendant made promises and representations to its employees that the Private Information it collected from them as a condition of obtaining employment would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

17.     It was with this reasonable expectation and mutual understanding that Plaintiffs and Class Members provided their Private Information to Defendant. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. In turn, they relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information.

18.     Defendant was obligated to adopt reasonable measures to protect Plaintiffs' and Class Members' Private Information from involuntary disclosure and has a continuing legal duty to keep its employees' Private Information safe and confidential. Defendant recognizes these duties, declaring in its "Privacy Policy" last updated on April 4, 2023, that:

> "The Company will take all steps reasonably necessary to ensure that Your data is treated securely and in accordance with this Privacy Policy and no transfer of Your Personal Data will take place to an organization or a country unless there are adequate controls in place including the security of Your data and other personal information."[4]

19.     Defendant derived a substantial economic benefit from collecting Plaintiffs' and Class Members' Private Information. Without Plaintiffs and Class Members providing Defendant

---

[4] *See Privacy Policy*, https://www.plasolutions.com/privacy#transfer-of-your-personal-data%C2%A0 (last accessed Jan. 31, 2025).

this Private Information in exchange for being employed by Defendant, Defendant could not perform its business services.

20.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew, or should have known, that it was responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

### *Defendant's Data Breach*

21.    Over two months after discovering the Data Breach, on or about November 12, 2024, Defendant began sending Plaintiffs and other victims of the Data Breach *Notice of Data Security Incident* letters (the "Notice Letter"), including the following or similar information:

> Pallet Logistics of America d/b/a PLA ("PLA") is writing to inform you of a recent data security incident that may have involved your personal information. PLA takes the privacy and security of all information within its possession very seriously. We are writing to notify you about the incident, provide you with information about steps you can take to help protect your information, and offer you the opportunity to enroll in complimentary identity protection services that PLA is making available to you.
>
> **What Happened?** On September 6, 2024, we discovered unusual activity in our digital environment. We immediately took steps to end this unusual activity and retained independent cybersecurity experts to determine what happened and whether sensitive information may have been affected. As a result of the investigation, we learned that an unauthorized actor acquired limited files stored within our legacy systems (not our active systems). Upon learning this, we launched a comprehensive review of all potentially affected information to determine if any personal information was possibly acquired. Following the completion of this comprehensive review, we confirmed on October 18, 2024, that your personal information may have been involved in the incident. Since that time, we have been working to gather contact information for individuals and prepare notification to all affected individuals of this incident.
>
> **What Information was Involved?** Following our review of the contents of the impacted data, on October 18th, 2024, we determined that your name and Social Security number or driver's license number were included. **We emphasize that we have no evidence of any actual or attempted misuse of this information**.

**What Are We Doing?** As soon as we discovered this incident, we took measures to further secure our network and enlisted outside cybersecurity experts to conduct a forensic investigation. We have also implemented additional security measures to help reduce the risk of a similar incident occurring in the future. In addition, we are notifying you of this event and providing resources you can utilize to help protect your information.

Out of an abundance of caution, we are offering identity theft protection services through Identity Defense Complete, a data breach and recovery services expert. Identity Defense Complete identity protection services include 12 months of credit monitoring, a $1,000,000 insurance reimbursement policy, and fully managed ID theft recovery services. With this protection, Identity Defense Complete will help you resolve issues if your identity is compromised.[5]

22.     Although Defendant admits that names and Social Security numbers were affected—the most sensitive data a person has—it omitted from the Notice Letter any details about the root cause of the Data Breach, the vulnerabilities exploited, and the specific remedial measures undertaken to ensure such a breach does not occur again. Plaintiffs and Class Members retain a vested interest in ensuring that their Private Information remains protected; without these details, their ability to mitigate the harms resulting from the Data Breach is severely diminished.

23.     Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, as evidenced by its offering Plaintiffs and Class Members identity monitoring services. Yet, Defendant did not use reasonable security procedures and practices given the nature of the sensitive information it maintained, such as encrypting the information or deleting it when it is no longer needed.

24.     The attacker accessed files in Defendant's computer systems containing unencrypted Private Information of Plaintiffs and Class Members, including their Social Security numbers. Plaintiffs further believe that their Private Information and that of Class Members was

---

[5] PLA, *Notice of Data Security Incident* (Nov. 12, 2024).

or will be sold on the dark web, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

### Defendant Acquires, Collects, & Stores Plaintiffs' and Class Members' Private Information

25.    As a condition of employment, Defendant requires its job applicants and employees to provide Defendant with their sensitive and confidential Private Information. Defendant retains this information and derives a substantial economic benefit from it. But for the collection of this Private Information, Defendant would be unable to perform its services.

26.    By collecting this data, Defendant assumed legal and equitable duties and knew that it was responsible for protecting the Private Information from disclosure. Upon information and belief, Defendant made promises that it would maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

27.    Plaintiffs and Class Members relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information. Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiffs and Class Members.

28.    Defendant's negligence in safeguarding the Private Information of Plaintiffs and Class Members is worsened by the repeated warnings and alerts directed at companies maintaining sensitive information to protecting and securing sensitive data.

### Defendant Knew, Or Should Have Known, Of the Risk it Faced

29.    Data thieves regularly target companies in possession of highly sensitive information. In storing the sensitive and confidential information of its job applicants, current, and

past employees, Defendant should have reasonably recognized that Plaintiffs' and Class Members' unprotected Private Information is valuable and could be highly sought after by cybercriminals.

30.     It is widely known that Private Information, especially Social Security numbers, is a frequent target of hackers. In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[6]

31.     Indeed, cyber-attacks have become so widespread that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store Private Information are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[7]

32.     Defendant was aware of the importance of safeguarding the Private Information entrusted to it by Plaintiffs and Class Members, and of the foreseeable consequences if its data security systems were breached. Yet, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

33.     Plaintiffs' and Class Members' injuries were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for their Private Information. The ramifications are severe. Once Private Information is stolen, the fraudulent use of that information and coinciding damage may continue for years.

---

[6] *See* Identity Theft Res. Ctr., *Identity Theft Resource Center's Annual End-of-Year Data Breach Report Reveals 17 Percent Increase in Breaches over 2018*, https://www.idtheftcenter.org/post/identity-theft-resource-centers-annual-end-of-year-data-breach-report-reveals-17-percent-increase-in-breaches-over-2018/ (last accessed Jan. 31, 2025).

[7] *See*, Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, Law360 (Nov. 18, 2019), https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection (last accessed Jan. 31, 2025).

34.    Given its voluntary taking of Plaintiffs' and Class Members' confidential information, Defendant knew the importance of safeguarding that Private Information and the foreseeable consequences of a breach. This includes the significant costs imposed on Plaintiffs and Class Members resulting from a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

### Defendant Fails to Comply With FTC Guidelines

35.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the important of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying data security 'best practices' that businesses, like Defendant, should employ to protect against the unlawful exposure of Private Information.

36.    Specifically, in 2016 the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established fundamental cybersecurity guidelines for businesses, including that businesses should: (1) protect the personal consumer information that they keep; (2) properly dispose of personal information that is no longer needed; (3) encrypt information stored on computer networks; (4) understand their networks' vulnerabilities; and (5) implement policies to correct any security problems.[8] In addition, the guidelines recommend that business implement an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that someone is attempting to hack the system; watch

---

[8] FTC, *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/system /files/documents/plain-language/pdf-0136_proteting-personal-information.pdf  (last  visited  Jan. 31, 2025).

for large amounts of data being transmitted from the system; and have a response plan prepared in the event of a breach.[9]

37.    The FTC further recommends that companies should not maintain PII longer than is necessary for authorizing a transaction; limit access to sensitive data; require complex passwords for use on networks; utilize industry-tested methods for security; monitor for suspicious activity on the network; and verify that service providers have implemented reasonable security measures.

38.    The FTC has enforced actions against businesses for failing to adequately and reasonably protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"). Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39.    Defendant failed to properly implement basic data security practices to protect the Private Information of Plaintiffs and Class Members.

40.    Defendant's failure to employ reasonable and adequate security measures to protect Plaintiffs' and Class Members' information against unauthorized access constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

41.    At all relevant times, Defendant was fully aware of its obligation to protect the Private Information of its current and former employees, including Plaintiffs and Class Members. Crucially, Defendant was aware of the significant repercussions that would result from its failure to do so, including the harms that would befall Plaintiffs and Class Members.

---

[9] *Id.*

*Defendant Fails to Comply With Industry Standards*

42.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[10] To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

---

[10] *See* U.S. Gov't, *How to Protect Your Networks from RANSOMWARE*, at 3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed Jan. 31, 2025).

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[11]

43.    All of these measures should have been employed, given that Defendant maintained the Private Information of its employees. However, upon information and belief, Defendant failed to implement many of these safeguards, thus resulting in the Data Breach.

44.    Additionally, experts studying cyber have identified several best practices that, at a minimum, should be implemented by companies in possession of sensitive Private Information, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these best practices, including a failure to implement multi-factor authentication.

---

[11] *Id.* at 3-4.

45.    Moreover, upon information and belief, Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

46.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiffs and Class Members in an unsafe and insecure manner.

***The Data Breach Increases Plaintiffs' and Class Members' Risk of Identity Theft***

47.    The unencrypted Private Information of Plaintiffs and Class Members will end up for sale on the dark web as that is the *modus operandi* of hackers.

48.    Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below. Here, the data stolen in the Data Breach has been used and will continue to be used in a variety of criminal ways to exploit Plaintiffs and Class Members.

49.    One such example of criminals piecing together bits and pieces of compromised PII for profit is the development of "Fullz" packages.[12] With "Fullz" packages, cyber-criminals

---

[12] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, Social Security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes,

can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

50.    The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. This means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like phone numbers and emails) of Plaintiffs and the other Class Members. Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package. Then, this package can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

### *Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

51.    Following a data breach, reasonable victims are expected to take steps to mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet the resource and asset of time has been lost.

52.    Recognizing the actual and imminent risk of identity theft faced by Plaintiffs and Class Members, Defendant instructed Plaintiffs and Class Members to take precautions, outlining recommended steps to take, in its Notice Letter.

---

including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/ (last accessed Jan. 31, 2025).

53.     Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach, contacting Defendant to obtain more information about the Data Breach's occurrence, contacting financial institutions to sort out fraudulent charges on their accounts, and more.

54.     These mitigation efforts are consistent with the U.S. Government Accountability Office ("GAO") 2007 report regarding data breaches that stated that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[13] These mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach.[14]

### Diminution of Value of Private Information

55.     Private Information is a valuable property right.[15] This value is axiomatic, considering the worth of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Undeniably, Private Information has considerable market value.

56.     Private Information is highly useful to criminals, as evidenced by the monetary value attributed to stolen identity credentials on the dark web cited by numerous sources.[16] For

---

[13] *See* GAO, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 2 (June 2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report") (last accessed Jan. 31, 2025).

[14] *See* FTC, *What To Do Right Away: What To Do Next*, https://www.identitytheft.gov/Steps (last accessed Jan. 31, 2025).

[15] *See, e.g.,* John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *1-2 (2009), also available at http:// law.richmond.edu/jolt/v15i4/article11.pdf ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citation omitted).

[16] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 31, 2025).

16

example, Personal Information can be sold at a price ranging from $1 to $2,000.[17] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[18]

57.    Social Security numbers—which comprise some of the confidential information implicated in the Data Breach—are among the worst kind of Private Information to have stolen. This is because Social Security numbers can be used to achieve a variety of fraudulent uses and are difficult for an individual to change.

58.    Obtaining a new Social Security number involves significant paperwork and evidence of actual misuse. Even then, this is not a guaranteed fix. According to Julie Fergerson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[19]

59.    The information compromised in the Data Breach is more substantial than that of, for example, credit card information in a retailer data breach because, the information compromised in this Data Breach, like Social Security numbers, is impossible to "close" and difficult, if not impossible, to change. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth

---

[17] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Jan. 31, 2025).

[18] *In the Dark*, VPNOverview (2019), https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Jan. 31, 2025).

[19] Brian Naylor, *Victims Of Social Security Number Theft Find It's Hard To Bounce Back*, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft#:~:text=%22The%20credit%20bureaus%20and%20banks,the%20victim%20of%20identity%20theft.%22 (last accessed Feb. 3, 2025).

more than 10x on the black market."[20] Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

60.    Even consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[21]

61.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been diminished by its compromise and unauthorized release. This transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Because this information is now readily available, and its confidentiality lost, Plaintiffs and Class Members have suffered an additional loss of value.

### *Future Cost of Credit and Identity Theft Monitoring Is Reasonable And Necessary*

62.    Given the type of targeted attack in this case and the type of data involved, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for crimes –*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

---

[20] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Feb. 3, 2025).

[21] Mike Brassfield, *This Company Will Pay You $50 This Year Just for Downloading Its Free App*, (updated May 31, 2019), https://www.thepennyhoarder.com/make-money/nielsen-panel/ (last accessed Feb. 3, 2025).

63.    Such fraud may go undetected for years. An individual may not know that his Private Information was used to file for unemployment benefits until law enforcement notifies his employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected. Consequently, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

64.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach.

### *Loss of Benefit of the Bargain*

65.    Furthermore, Defendant's poor data security deprived Plaintiffs and Class Members of the benefit of their bargain. When applying for employment and agreeing to work on Defendant's behalf, Plaintiffs and other reasonable applicants and employees understood and expected that Defendant would properly safeguard and protect their Private Information. Accordingly, Plaintiffs and Class Members received employment positions of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant's clients.

### *Plaintiff Allan Askrens' Experience*

66.    Upon Information and belief, Defendant obtained Plaintiff Askrens' Private Information when he applied to work for Defendant.

67.    As a condition of obtaining employment with Defendant, Plaintiff Askrens was required to provide Defendant, directly or indirectly, with his Private Information, including his name and Social Security number. Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

19

68.     Plaintiff Askrens is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Askrens would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security policies.

69.     Plaintiff Askrens received the Notice Letter, by U.S. mail, directly from Defendant, dated November 12, 2024, informing him that his Private Information was improperly accessed and obtained by unauthorized third parties during the Data Breach. According to this Notice Letter, Defendant's investigation "confirmed on October 18, 2024, that [Plaintiff's and Class Members'] personal information may have been involved in the incident."

70.     As a result of the Data Breach and at the direction of the Notice Letter, Plaintiff Askrens made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the legitimacy of the Data Breach, communicating with his financial and insurance services providers to alert them of the breach and learn more about precautions he can take, and changing account passwords for all of his accounts tied to sensitive personal information. Plaintiff has spent significant time on activities in response to the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

71.     Plaintiff Askrens suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with

attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

72.     Plaintiff Askrens also suffered actual injury in the form of $4,000 in student loans that an unauthorized person applied for in his name in California, as well as experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

73.     The Data Breach has caused Plaintiff Askrens to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed him of key details about the Data Breach's occurrence.

74.     As a result of the Data Breach, Plaintiff Askrens anticipates spending considerable time on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

75.     As a result of the Data Breach, Plaintiff Askrens is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

76.     Plaintiff Askrens has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Robert L. Bennett's Experience*

77.    Upon information and belief, Defendant obtained Plaintiff Bennett's Private Information when he applied to work for Defendant. Plaintiff is a former employee of Defendant's.

78.    As a condition of obtaining employment with Defendant, Plaintiff Bennett was required to provide Defendant, directly or indirectly, with his Private Information, including his name and Social Security number. Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

79.    Plaintiff Bennett is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Bennett would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security policies.

80.    Plaintiff Bennett received the Notice Letter, by U.S. mail, directly from Defendant, dated November 12, 2024, informing him that his Private Information was improperly accessed and obtained by unauthorized third parties during the Data Breach. According to this Notice Letter, Defendant's investigation "confirmed on October 18, 2024, that [Plaintiff's and Class Members'] personal information may have been involved in the incident."

81.    As a result of the Data Breach and at the direction of the Notice Letter, Plaintiff Bennett made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the legitimacy of the Data Breach, changing passwords and resecuring his own computer network, and contacting companies regarding suspicious activity on his accounts. Plaintiff has spent significant time on activities in response to the Data Breach—

valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

82.     Plaintiff Bennett suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of his Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

83.     The Data Breach has caused Plaintiff Bennett to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed him of key details about the Data Breach's occurrence.

84.     As a result of the Data Breach, Plaintiff Bennett anticipates spending considerable time on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

85.     As a result of the Data Breach, Plaintiff Bennett is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

86.     Plaintiff Bennett has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

*Plaintiff Shawn Boschert's Experience*

87.     Although Plaintiff Boschert does not recall providing Defendant with his Private Information directly, upon information and belief, Defendant obtained Plaintiff Boschert's Private Information when he applied to work for his former employer, Propak, who is a member of PLA.

88.     As a condition of obtaining employment with his former employer, Plaintiff Boschert was required to provide his Private Information, including his name, Social Security number, and driver's license number. Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

89.     Plaintiff Boschert is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security policies. Plaintiff does not recall ever learning that his PII was compromised in a data breach incident, other than in the Data Breach at issue in this case.

90.     Defendant sent Plaintiff Boschert a Notice Letter via U.S. mail, dated November 12, 2024, informing him that his Private Information was improperly accessed and obtained by unauthorized third parties during the Data Breach. However, Plaintiff's Notice Letter was incorrectly delivered to a family members' address, forcing Plaintiff to contact PLA to request a new Notice Letter, which he has not yet received. Thus, Defendant has deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects.

91.     As a result of the Data Breach, Plaintiff Boschert made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the

legitimacy of the Data Breach and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. Plaintiff has spent significant time on activities in response to the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

92.    Plaintiff Boschert suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

93.    Plaintiff Boschert also suffered actual injury. Following the Data Breach, Plaintiff received an email notification that his Vacro bank debit account was being closed due to suspicious activity. Plaintiff did not perform any activities that he believes would have triggered this closure. Furthermore, following the Data Breach, Plaintiff has experienced an increase in spam texts and calls, which, upon information and belief, was caused by the Data Breach and suggests that his PII is now in the hands of cybercriminals.

94.    The Data Breach has caused Plaintiff Boschert to suffer fear, anxiety, frustration, stress, which has been compounded by the fact that Defendant has still not fully informed him of

key details about the Data Breach's occurrence. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a victims of data breaches that the law contemplates and addresses.

95.    As a result of the Data Breach, Plaintiff Boschert anticipates spending considerable time on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

96.    As a result of the Data Breach, Plaintiff Boschert is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

97.    Plaintiff Boschert has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

98.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated in the proposed Nationwide Class (the "Nationwide Class" or "Class") pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

99.    Plaintiffs propose the following Class definition, subject to amendment as appropriate:

### The Nationwide Class
All individuals residing in the United States whose Private Information was maintained on Defendant's computer systems that were compromised in the Data Breach discovered by Defendant in or about September 2024 (the "Class").

100.    Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

101.    Plaintiffs hereby reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

102.    <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, upon information and belief in comprises thousands of individuals employed across the entirety of Defendant's network.

103.    <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.    Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.    Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.   Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.   Whether Defendant's conduct was negligent;

k.   Whether Defendant breached implied contracts for adequate data security with Plaintiffs and Class Members;

l.   Whether Defendant was unjustly enriched by retention of the monetary benefits conferred on it by Plaintiffs and Class Members;

m.   Whether Defendant failed to provide notice of the Data Breach in a timely manner; and,

n.   Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

104.   Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

105.   Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

106.   Predominance. Fed. R. Civ. P. 23(b)(3). Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class

Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

107.    <u>Superiority</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

108.    <u>Policies Generally Applicable to the Class</u>. Fed. R. Civ. P. 23(b)(2). Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

109.    <u>Issue Certification</u>. Fed. R. Civ. P. 23(c)(4). Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

        a.    Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

b.  Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

c.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d.  Whether Defendant failed to take commercially reasonable steps to safeguard employee Private Information; and

110.    Finally, all Members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent Notice of the Data Incident letters by Defendant.

**COUNT I**
**Negligence**
**(On behalf of Plaintiffs and the Class)**

111.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

112.    Defendant gathered and stored the Private Information of Plaintiffs and Class Members as part of soliciting employees for its business, the services of which affect commerce.

113.    Plaintiffs and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information and would provide prompt notice in the instance that their Private Information was disclosed or otherwise breached.

114.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information were wrongfully disclosed.

115.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable

30

means to secure and safeguard their computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

116.    Pursuant to the Texas Business and Commercial Code §§ 521.052 and 521.053, and industry standards, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' confidential Private Information from disclosure.

117.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair … practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to implement reasonable measures to protect confidential data.

118.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected Plaintiffs' and Class Members' Private Information.

119.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its employees. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of being employed by Defendant.

120.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

121.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class.

122.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' Private Information it was no longer required to retain pursuant to regulations.

123.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiffs and the Class of the Data Breach.

124.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiffs and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

125.    Defendant breached its duties, pursuant to the Texas Business and Commercial Code §§ 521.052 and 521.053, FTCA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

     a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

     b.    Failing to adequately monitor the security of their networks and systems;

    c.    Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

    d.    Allowing unauthorized access to Class Members' Private Information;

    e.    Failing to detect in a timely manner that Class Members' Private Information had been compromised;

    f.    Failing to remove former employees' Private Information it was no longer required to retain;

    g.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

    h.    Failing to secure its stand-alone personal computers, even after discovery of the data breach.

126.    Defendant's conduct violated the statutes referenced herein by failing to use reasonable measures to protect Private Information and comply with applicable industry standards, at described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

127.    Plaintiffs and Class Members are within the class of persons that the Texas Business and Commercial Code §§ 521.052 and 521.053 and FTCA were intended to protect.

128.    The harm that occurred as a result of the Data Breach is the type of harm these statutes were intended to guard against.

129.    Defendant's violation of these statutes constitutes negligence.

130.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable in light of Defendant's inadequate security practices.

131.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach

of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

132.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems. The injuries Plaintiffs and Class Members suffered were also foreseeable.

133.    Defendant was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach. At the same time, Plaintiffs and the Class had no ability to protect their Private Information that was in, and remains in, Defendant's possession.

134.    Defendant's duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

135.    Defendant has admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

136.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Class, the Private Information of Plaintiffs and the Class would not have been compromised.

137.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The Private Information of Plaintiffs

and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

138.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered (and will continue to suffer) injuries, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information. As a result of these injuries, Plaintiffs and Class Members are entitled to compensatory, nominal, and/or consequential damages.

139.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

140.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
### Negligence *Per Se*
### (On behalf of Plaintiffs and the Class)

141. Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

142. Section 5 of the FTCA, 15 U.S.C. § 45 prohibits companies like Defendant from "using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce," including failing to take reasonable measures to protect Private Information like that belonging to Plaintiffs and Class Members. In addition to the FTCA, the FTC enforces other federal laws pertaining to consumers' privacy and security. These FTC publications and orders also inform the basis of Defendant's duty here.

143. Defendant's duty to use reasonable care in protecting Plaintiffs' and Class Members' confidential data arose not only as a result of the FTCA, but also from industry standards requiring that businesses like Defendant protect confidential, sensitive Private Information.

144. Defendant breached its duties to Plaintiffs and Class Members under the FTCA by declining to implement and maintain fair, reasonable, and/or adequate computer systems and data security measures to safeguard Plaintiffs' and Class Members' Private Information.

145. Defendant's conduct and ensuing violation are particularly unreasonable given the nature and amount of Private Information that Defendant collected and stored, along with the foreseeable consequences of the data breach, particularly Plaintiffs' and Class Members' immense damages.

146. Moreover, the Texas Business and Commercial Code §§ 521.052 and 521.053 require that businesses like Defendant employ reasonable security measures, including corrective actions, to protect Private Information, as well as disclosure to victims without unreasonable delay.

147.    Defendant breached its duties to Plaintiffs and Class Members under the Texas Business and Commercial Code §§ 521.052 and 521.053 by failing to implement adequate protective—and, upon information and belief, corrective—measures to safeguard Plaintiffs' and Class Members' Private Information, as well as by failing to promptly notify Plaintiffs and Class Members of the Data Breach.

148.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

149.    The harms suffered by Plaintiffs and Class Members are the type the FTCA and Texas Business and Commercial Code statutes were intended to protect against. Certainly, the FTCA has pursued numerous enforcement actions against businesses that failed to implement reasonable data security measures and avoid unfair and deceptive practices, and that therefore caused similar harms as those suffered by Plaintiffs and Class Members.

150.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

151.    Plaintiffs' and Class Members' injuries and harms were the reasonably foreseeable result of Defendant's breach of its duties. At all relevant times, Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the unauthorized exposure of their Private Information.

152.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered (and will continue to suffer) injuries, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate

the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information. As a result of these injuries, Plaintiffs and Class Members are entitled to compensatory, consequential, and punitive damages.

**COUNT III**
**Invasion of Privacy (Public Disclosure of Private Facts)**
**(On behalf of Plaintiffs and the Class)**

153.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

154.    Plaintiffs and Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

155.    As a result of Defendant's conduct, publicity was given to Plaintiffs' and Class Members' Private Information.

156.    A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and Class Members' Private Information to be highly offensive.

157.    Plaintiffs' and Class Members' Private Information is not of legitimate public concern and should remain private.

158.    As such, Defendant's conduct, as alleged above, resulted in a public disclosure of private facts, for which it is liable.

159.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered (and will continue to suffer) injuries, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of

Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information. Thus, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial and any other relief allowed by law.

## COUNT IV
### Invasion of Privacy (Intrusion Upon Seclusion)
### (On behalf of Plaintiffs and the Class)

160.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

161.    The State of Texas recognizes the tort of Intrusion Upon Seclusion, and adopts the formulation of that tort found in the Restatement (Second) or Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

162.    Plaintiffs and Class Members had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

163.    Defendant owed a duty to its clients' customers, including Plaintiffs and Class Members, to keep this information confidential.

164.    The unauthorized acquisition (*i.e.*, theft) by a third party of Plaintiffs' and Class Members' Private Information is highly offensive to a reasonable person.

165.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and Class Members or their third-party agents disclosed their sensitive and confidential information to Defendant, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

166.    The Data Breach constitutes an intentional interference with Plaintiffs' and Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

167.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

168.    Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and Class Members in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

169.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and Class Members.

170.    As a proximate result of Defendant's acts and omissions, Plaintiffs' and Class Members' Private Information was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and Class Members to suffer damages.

171.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members because their Private Information is, upon information and belief, still maintained by Defendant with its inadequate cybersecurity system and policies.

172.    Plaintiffs and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiffs and Class Members.

173.    In addition to injunctive relief, Plaintiffs, on behalf of themselves and Class Members, also seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

<u>**COUNT V**</u>
**Breach of Express Contract**
**(On behalf of Plaintiffs and the Class)**

174.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

175.    In its regular course of business, Defendant entered into various contracts with its business partners as a means of providing services to their current and former employees, including Plaintiffs and Class Members, *i.e.*, Defendant's consumers.

176.    These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiffs and Class Members, as it was their confidential information that Defendant agreed to collect and protect through its services. Thus, the benefit of collecting and

protecting Plaintiffs' and Class Members' Private Information was the direct and primary objective of the contracting parties.

177.    Defendant knew that if it were to breach these contracts with its clients and business partners, Defendant's consumers, including Plaintiffs and Class Members, would be harmed by, among other things, fraudulent misuse of their Private Information.

178.    Defendant breached its contracts with its clients and business partners when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiffs' and Class Members' Private Information.

179.    A reasonably foreseeable result of the breach, Plaintiffs and Class Members were harmed by Defendant's failure to use reasonable data security measures to store their Private Information, including but not limited to, the actual harm through the loss of their Private Information to cybercriminals.

180.    Accordingly, Plaintiffs and Class Members are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

## COUNT VI
### Breach of Implied Contract
### (On behalf of Plaintiffs and the Class)

181.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

182.    This Count is pleaded in the alternative to Plaintiffs' Breach of Express Contract claim above.

183.    Plaintiffs and Class Members directly contracted with Defendant. Specifically, Plaintiffs and the Class Members entered into implied contracts with Defendant under which

Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members that their information had been breached and compromised.

184.    Plaintiffs and Class Members were required to provide their Private Information to Defendant as a condition of seeking and/or being employed by Defendant. As such, Defendant solicited and invited Plaintiffs and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiffs and Class Members accepted Defendant's offer and, accordingly, provided Defendant with their sensitive, confidential, Private Information.

185.    Plaintiffs and Class Members reasonably understood that, in exchange for providing and/or seeking employment from Defendant, that Defendant would pay for adequate cybersecurity measures from a portion of their revenues.

186.    Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

187.    Plaintiffs and the Class Members accepted Defendant's offers by disclosing their Private Information to Defendant in exchange for employment. In turn, and through internal policies, Defendant agreed to protect and not disclose Private Information to unauthorized persons.

188.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information. After all, Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

189.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

190.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

191.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

192.    Defendant materially breached the contracts it entered with Plaintiffs and Class Members by:

    a.   failing to adequately safeguard their information;

    b.   failing to notify them promptly of the intrusion into its computer systems that compromised such information;

    c.   failing to comply with industry standards;

    d.   failing to comply with the legal obligations necessarily incorporated into the agreements; and

193.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

194.    Moreover, a meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendant in exchange for—among other things—the protection of their Private Information.

195.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendant.

44

196.     Moreover, the implied promise of confidentiality between Plaintiffs and Class Members and Defendant includes consideration beyond those pre-existing general duties owed under state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security. The implied promises include but are not limited to: (i) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (ii) restricting access to qualified and trained agents; (iii) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (iv) applying or requiring proper encryption; (v) multifactor authentication for access; and (vi) other steps to protect against foreseeable data breaches.

197.     Plaintiffs and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

198.     The implied promises include but are not limited to: (i) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (ii) restricting access to qualified and trained agents; (iii) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (iv) applying or requiring proper encryption; (v) multifactor authentication for access; and (vi) other steps to protect against foreseeable data breaches.

199.     Plaintiffs and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

200.     Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*). In particular, as a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and Class Members have

suffered and will continue to suffer injuries, including but not limited to: (i) ongoing, imminent and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harm.

201.    And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

202.    Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**COUNT VII**
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Class)**

203.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

204.    This Count is pleaded in the alternative to Plaintiffs' claim for Breach of Express and Implied Contract claims above.

205.    Plaintiffs and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Defendant should have provided adequate data security for Plaintiffs and Class Members.

206.    Defendant knew that Plaintiffs and Class Members conferred a benefit on it in the form of their Private Information, as providing that Private Information was a condition of being employed by Defendant or even of seeking employment from Defendant. Defendant appreciated

and accepted that benefit. Defendant profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes.

207.    Defendant failed to secure Plaintiffs' and Class Members' Private Information, and thus, did not provide full compensation for the benefit of Plaintiffs and Class Members.

208.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiffs and Class Members.

209.    As such, a portion of the revenue derived from its employees is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

210.    Defendant, however, failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiffs and Class Members provided.

211.    Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiffs and Class Members and derived revenue by using it for business purposes. Plaintiffs and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

212.    Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

213.    If Plaintiffs and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed their Private Information to be provided to Defendant.

214.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

215.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

216.    Plaintiffs and Class Members have no adequate remedy at law.

217.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information.

218.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

219.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.

**COUNT VIII**
**Breach of Implied Covenant of Good Faith & Fair Dealing**
**(On behalf of Plaintiffs and the Class)**

220.     Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

221.     Every contract in this State (Texas) has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

222.     Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

223.     Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members, and continued acceptance of Private Information and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

224.     Defendant acted in bad faith and/or with malicious motive in denying Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## COUNT IX
### Breach of Confidence
### (On behalf of Plaintiffs and the Class)

225.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

226.    During Plaintiffs' and Class Members' interactions with Defendant, Defendant was fully aware of the confidential nature of the Private Information that Plaintiffs and Class Members provided to it.

227.    As alleged herein and above, Defendant's relationship with Plaintiffs and Class Members was governed by promises and expectations that Plaintiffs and Class Members' Private Information would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

228.    Plaintiffs and Class Members provided their respective Private Information to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

229.    Plaintiffs and Class Members also provided their Private Information to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect their Private Information from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting its networks and data systems.

230.    Defendant voluntarily received, in confidence, Plaintiffs' and Class Members' Private Information with the understanding that the Private Information would not be accessed by,

acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

231.    Due to Defendant's failure to prevent, detect and avoid the Data Breach from occurring by, inter alia, not following best information security practices to secure Representative Plaintiffs' and Class Members' Private Information, Plaintiffs' and Class Members' Private Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiffs' and Class Members' confidence and without their express permission.

232.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and Class Members have suffered damages, as alleged herein.

233.    But for Defendant's failure to maintain and protect Plaintiffs' and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. The Data Breach was the direct and legal cause of the misuse of Plaintiffs' and Class Members' Private Information and the resulting damages.

234.    The injury and harm Plaintiffs and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Plaintiffs' and Class Members' Private Information. Defendant knew its data systems and protocols for accepting and securing Plaintiffs' and Class Members' Private Information had security and other vulnerabilities that placed Plaintiffs' and Class Members' Private Information in jeopardy.

235.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered (and will continue to suffer) injuries, including but not limited to: (i)

invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information.

**COUNT X**
**Breach of Fiduciary Duty**
**(On behalf of Plaintiffs and the Class)**

236.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

237.    In light of the special relationship between Defendant and Plaintiffs and Class Members, whereby Defendant became the guardian of Plaintiffs' and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information to act primarily for Plaintiffs and Class Members, (i) for the safeguarding of Plaintiffs' and Class Members' Private Information, (ii) to timely notify Plaintiffs and Class Members of a data breach and disclosure, and (iii) to maintain complete and accurate records of what information (and where) Defendant did has and continues to store.

238.    Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of its relationship with its customers' patients and former patients—in particular, to keep their Private Information secure.

239.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

240.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiffs' and Class Members' Private Information.

241.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach.

242.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

243.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their Private Information, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, contest, and recover from identity theft, (v) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of

the lives of Plaintiffs and Class Members, and (vii) the diminished value of Defendant's services they received.

244.    Moreover, as a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT XI**
**Declaratory Judgment**
**(On behalf of Plaintiffs and the Class)**

245.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

246.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal statute described in this Complaint.

247.    Defendant owes a duty of care to Plaintiffs and Class Members, which required it to adequately secure Plaintiffs' and Class Members' Private Information.

248.    Upon information and belief, Plaintiffs' and Class Members' Private Information still remains in Defendant's possession.

249.    An actual controversy has arisen after the Data Breach regarding Plaintiffs' and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their Private Information. Plaintiffs allege that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiffs continue to suffer injury due to the compromise of their Private Information and

remain at imminent risk that further compromises of their Private Information will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

250.    Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

251.    Plaintiffs and Class Members have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including: (i) Defendant's failure to encrypt Plaintiffs' and Class Members' Private Information, including Social Security numbers, while storing it in an Internet-accessible environment, and (ii) Defendant's failure to delete Private Information it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiffs.

252.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.  Defendant owes a legal duty to secure the Private Information of Plaintiffs and Class Members;

      b.  Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information;

      c.  Defendant's ongoing breaches of its legal duty continue to cause Plaintiffs harm.

253.    This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law, industry, and government

regulatory standards to protect consumers' Private Information. Specifically, this injunction should, among other things, direct Defendant to:

      a.  engage third-party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

      b.  audit, test and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

      c.  regularly test its systems for security vulnerabilities, consistent with industry standards; and

      d.  implement an education and training program for appropriate employees regarding cybersecurity.

254.    If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

255.    The hardship to Plaintiffs, if an injunction is not issued, exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to use such measures.

256.    Issuance of the requested injunction will satisfy the public interest. On the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus

eliminating the additional injuries that would result to Plaintiffs and others whose confidential information would be further compromised

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

I.      For an Order certifying this action as a Class action and appointing Plaintiffs as Class Representatives for the Nationwide Class, as well as appointing their counsel as Class Counsel, as requested herein;

II.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the failures leading to the unauthorized disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

III.    For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

IV.     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

V.      For injunctive relief requested by Plaintiffs, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an Order:

a.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b.  requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

c.  requiring Defendant to delete and purge Plaintiffs' and Class Members' Private Information unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

d.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' Private Information;

e.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f.  prohibiting Defendant from maintaining Representative Plaintiff's and Class Members' Private Information on a cloud-based database;

g.  requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.  requiring Defendant to conduct regular database scanning and securing checks;

i.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees'

respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiffs and Class Members;

j.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k.   requiring Defendant to implement, maintain, review and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested and updated;

l.   requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves.

VI.     Ordering Defendant to pay for not less than five years of three-bureau credit monitoring services for Plaintiffs and the Class;

VII.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

VIII.     For an award of punitive damages, as allowable by law;

IX.     For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

X.     Pre- and post-judgment interest on any amounts awarded; and,

XI.     Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: February 3, 2025                    Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (*pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Phone: 214-744-3000
Fax: 214-744-3015
*jkendall@kendalllawgroup.com*

Samuel J. Strauss*
Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Phone: 872-263-1100
Fax: 872-263-1109
*sam@straussborrelli.com*
*raina@straussborrelli.com*

Daniel Srourian*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Drive, Suite 200
Beverly Hills, CA 90210
Phone: 213-474-3800
Fax: 213-474-4160
*daniel@slfla.com*

*Counsel for Plaintiffs and the Proposed Class*

**Pro Hac Vice* application forthcoming