# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **ALLAN ASKRENS, ROBERT L. BENNETT,** and **SHAWN BOSCHERT,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PALLET LOGISTICS OF AMERICA, LLC**, d/b/a PLA, <br><br> Defendant. | Case No. 3:25-cv-00008-S <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

MEMORANDUM IN SUPPORT.........................................................................................1

I.      INTRODUCTION ....................................................................................................1

II.     STATEMENT OF FACTS ........................................................................................2

        A.      PLA's Business...............................................................................................2

        B.      The Data Incident............................................................................................2

        C.      Procedural History ..........................................................................................3

        D.      The Settlement Terms .....................................................................................4

                1.      The Settlement Class...........................................................................4

                2.      Settlement Benefits .............................................................................5

                        a.      Compensation for Out-of-Pocket Losses ...............................5

                        b.      Credit and Identity Monitoring Protections ...........................6

                        c.      Pro Rata Cash Payment...........................................................6

                        d.      California Statutory Cash Payment.........................................6

                        e.      Equitable Relief ......................................................................7

                        f.      Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards...........................................7

                3.      Notice to Class Members....................................................................7

                4.      Claims, Objections, Opt-Outs, and Termination ...........................8

III.    ARGUMENT AND HISTORY................................................................................9

        A.      Class Action Settlement Approval Process....................................................9

        B.      The Settlement Satisfies the Criteria for Preliminary Approval...........................10

1.      The Settlement is the product of serious, informed, and arm's-length negotiations ................................................................................................13

2.      The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members ............................13

C.      Preliminary Certification of the Settlement Class is Appropriate ........................15

1.      The Settlement Class satisfies the requirements of Rule 23(a)..................16

a.  Numerosity............................................................................................16

b.  Typicality .............................................................................................16

c.  Pro Rata Cash Payment.......................................................................18

d.  California Statutory Cash Payment......................................................18

2.      The Settlement Class satisfies the requirements of Rule 23(b). ................19

a.  Predominance.......................................................................................20

b.  Superiority............................................................................................20

D.      The Court Should Approve the Proposed Notice Program....................................21

E.      The Court Should Appoint the Settlement Administrator ......................................22

F.      The Court Should Appoint the Class Representatives...........................................22

G.      The Court Should Appoint the Settlement Class Counsel .....................................23

IV.     CONCLUSION....................................................................................................................23

CERTIFICATE OF SERVICE ....................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)...................................................... 12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................................... 15

*Billitteri v. Securities Am., Inc.*,
Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ............... 22

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..................................................................................................... 10

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................................... 10

*Feder v. Elec. Data Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) ....................................................................................................... 18

*Garza v. Sporting Goods Properties, Inc.*,
No. 93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)....................................................... 10

*Hapka v. Carecentrix, Inc.*,
Case No. 2:16-cv-02372, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ..................................... 20

*Hays v. Eaton Grp. Attorneys, LLC*,
Civ. No. 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ....................................................... 12

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018).................................................................................................. 19

*In re Brinker Data Incident Litig.*,
No. 3:18-CV-686, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021)............................................... 16

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. 11-CV-1363, 2012 WL 92498 (E.D. La. Jan. 10, 2012)....................................................... 10

*In re Cirrus Logic, Inc.*,
No. A-07-CA-212-SS, 2009 WL 10670041 (W.D. Tex. Jan. 8, 2009) ...................................... 10

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ....................................................................................................... 17

*In re Equifax, Inc. Customer Data Security Breach Litig.*,
No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)................................................ 16

*In re Heartland Payment Systems,* Inc. Customer Data Sec. Breach Litig.,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................ 16, 19

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.,*
No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022) ...................................................... 16

*In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mex.,*
910 F. Supp. 2d 891 (E.D. La. 2012) ......................................................................... 12

*In re Pool Prods. Distrib. Market Antitrust Litig.,*
310 F.R.D. 300 (E.D. La. 2015) ................................................................................. 11

*In re Shell Oil Refinery,*
155 F.R.D. 552 (E.D. La. 1993) ................................................................................... 9

*In re Target Corp. Customer Data Security Breach Litig.,*
309 F.R.D. 482 (D. Minn. 2015) ................................................................................ 16

*In re TD Ameritrade Acct. Holder Litig.,*
No. C 07-2852, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ................................. 14

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
No. 1:14-md-02583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................... 20

*In re TJX Cos. Retail Sec. Breach Litig.,*
246 F.R.D. 389 (D. Mass. 2007) ................................................................................ 14

*Jenkins v. Raymark Industries, Inc.,*
782 F.2d 468 (5th Cir. 1986) ..................................................................................... 19

*Karvaly v. eBay, Inc.,*
245 F.R.D. 71 (E.D.N.Y. 2007) .................................................................................. 11

*Kincade v. Gen. Tire & Rubber Co.,*
635 F.2d 501 (5th Cir. 1981) ..................................................................................... 10

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ................................................................................................... 21

*Mullen v. Treasure Chest Casino, LLC,*
186 F.3d 620 (5th Cir. 1999) ..................................................................................... 16

*Nelson v. Constant,*
No. 3:20-CV-3042, 2020 WL 5258454 (E.D. La. Sept. 2, 2020) ......................... 15, 17

*ODonnell v. Harris Cty.,*
No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ........................... 10, 12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)......................................................................................................... 13

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ...................................................................................... 10

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ........................................................................................ 12

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ........................................................................................ 18

*Stott v. Cap. Fin. Servs. Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ............................................................................ 12, 22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................................... 16

## Constitutions

Tex. Const., art. 1, § 19............................................................................................................ 22

U.S. Const., amend. XIV ......................................................................................................... 22

## Rules

Fed. R. Civ. P. 23........................................................................................... 1, 12, 17, 21, 22

Fed. R. Civ. P. 23(a) ........................................................................................... 10, 15, 16, 19

Fed. R. Civ. P. 23(a)(1)............................................................................................................ 16

Fed. R. Civ. P. 23(a)(2)............................................................................................................ 16

Fed. R. Civ. P. 23(a)(3)............................................................................................................ 18

Fed. R. Civ. P. 23(b) ........................................................................................................... 10, 19

Fed. R. Civ. P. 23(b)(3)............................................................................................. 15, 19, 20, 21

Fed. R. Civ. P. 23(c)(2)(b) ...................................................................................................... 22

Fed. R. Civ. P. 23(e) ......................................................................................................... 9, 11, 21

Fed. R. Civ. P. 23(e)(1)...................................................................................................... 21, 22

Fed. R. Civ. P. 23(e)(2)...................................................................................................... 11, 12

Fed. R. Civ. P. 23(e)(3)............................................................................................................ 11

**Other Authorities**

2 *McLaughlin on Class Actions*, § 6:7 (15th ed. 2018) ................................................................ 12

2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992) .......................... 9

Max Meglio, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to
    Consumer Data Breach Litigation*, 61 B.C. L. Rev. 1223 (2020)............................................. 14

William B. Rubenstein, *Newberg on Class Actions* § 13:18 (5th ed. June 2019 update)............. 10

## I.     INTRODUCTION

Plaintiffs Allan Askrens, Robert L. Bennett, and Shawn Boschert, on behalf of themselves and all others similarly situated, hereby respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23. After several weeks of arm's-length negotiations and an April 21, 2025, mediation session with Hon. W. Royal Furgeson, Jr. (Ret.), an experienced mediator with FEDARB, the Plaintiffs and Defendant Pallet Logistics of America, LLC, d/b/a PLA ("Defendant" or "PLA," and collectively with Plaintiffs, the "Parties") reached the Settlement Agreement (the "Settlement" or "S.A.")[1] attached hereto as **Exhibit 1**.

The Settlement provides for a $635,000 non-reversionary Settlement Fund from which Settlement Class Members can make claims for timely and meaningful benefits. Under the Settlement, Settlement Class Members are eligible to receive up to $5,000 in Out-of-Pocket Losses, two years of Credit and Identity Monitoring protection, a Pro Rata Cash Payment estimated to be at least $50.00, and an additional $50.00 cash payment for Settlement Class Members who were residing in California on the day of the Data Incident ("California Statutory Cash Payment"). Additionally, PLA will undertake commitments to implement or maintain additional data security measures at its own expense (*i.e.*, separate from the Settlement Fund) and separate from the other settlement benefits made available to the Settlement Class. S.A. ¶ 3.11. The Settlement satisfies the preliminary approval standard as it is likely to be approved as fair, reasonable, and adequate.

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Plan; (3) appointing Atticus as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only;

---

[1] All capitalized terms herein shall be given the same meaning as those terms are defined in the Settlement Agreement.

(5) appointing Plaintiffs as Class Representatives; (6) appointing Class Counsel; (7) approving the form and content of the Notice Plan (attached to the Settlement Agreement); and (8) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' Service Awards. The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that provides Settlement Class Members with substantial monetary relief without the risk or delay of further litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this District and elsewhere.

## II.   STATEMENT OF FACTS

### A.  PLA's Business

PLA "is a leading provider of recycled pallets and pallet-management services" headquartered in Dallas, Texas. *See* Second Amended Consolidated Class Action Complaint ("Compl.") ¶¶ 1,10. As a result, it collects and stores the personal information of thousands of its current, former, and prospective employees, including names, Social Security numbers, and driver's license or state identification card numbers (referred to as "Private Information"). *Id*. ¶¶ 2, 14-15; S.A. ¶ 1.29.

### B.  The Data Incident

On September 6, 2024, PLA discovered that an unauthorized third party had accessed its computer network. Compl. ¶ 21. As a result of the Data Incident, the cybercriminals were able to access and acquire the Private Information of its current, former, and prospective employees. *Id*. Plaintiffs are former and/or prospective employees of PLA, as well as victims of this Data Incident.

2

*Id*. ¶¶ 66-67, 69, 77-78, 80, 87-88, 90. PLA denies both these allegations and that Plaintiffs and Settlement Class Members are entitled to any relief.

### C.  Procedural History

Following PLA's notification to those affected by the Data Incident and an investigation by Class Counsel, on November 21, 2024, Plaintiff Askrens filed a class action lawsuit against PLA in the District Court of Dallas County of the 14th Judicial District. *See Askrens v. Pallet Logistics of America, LLC* d/b/a PLA, No. DC-24-20596. Dkt. 1 (the "*Askrens* case"). Plaintiff Askrens alleged that, as a result of the Data Incident, PLA was liable for negligence, invasion of privacy, unjust enrichment, and breach of implied contract. *Id*. Shortly after, Plaintiffs Boschert and Bennett filed their respective class actions lawsuits in the same court, alleging substantially similar claims. *See Bennett vs. Pallett Logistics of America, LLC*, No. DC-24-21297; *Boschert vs. Pallet Logistics of America*, No. DC-24-20951.

On January 2, 2025, the *Askrens* case was removed to the District Court of the Northern District of Texas, Dallas Division and assigned the present case number. On February 3, 2025, Plaintiff Askrens filed an amended complaint adding Plaintiffs Boschert and Bennett. A second amended consolidated complaint was filed by Plaintiffs on April 29, 2025, asserting negligence, negligence *per se*, breach of implied contract, unjust enrichment, violation of the California Consumer Privacy Act, and declaratory judgment claims. Shortly thereafter, but prior to engaging in formal discovery, the Parties agreed to work cooperatively to schedule mediation and attempt to resolve their claim. Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") ¶ 10. Prior to mediation, the Parties exchanged key information needed to inform their strategies including the number of breach victims and the

changes made to its systems since the breach. *Id.* ¶ 11. This helped the Parties fully understand the claims, defenses, and risks of continued litigation. *Id.*

On April 21, 2025, the Parties mediated with Hon. W. Royal Furgeson, Jr. (Ret.), a mediator experienced in resolving data breach cases. Joint Decl. ¶ 13. Under his guidance, the Parties negotiated at arm's length, communicating their positions through him and evaluating the strengths and weaknesses underlying their claims and defenses. *Id.* ¶ 14. This session with Judge Furgeson did not result in a settlement in principle. *Id.* ¶ 15. Soon after the mediation session, Judge Furgeson submitted a mediator's proposal that both Parties ultimately accepted. *Id.* Throughout all negotiations, Class Counsel and counsel for PLA advocated for the interests of their clients. While the negotiations were always collegial, cordial, and professional, they were undoubtedly adversarial, with both Parties forcefully advocating the position of their clients. *Id.*

In the following weeks, the Parties diligently negotiated, drafted, and circulated drafts of the Settlement Agreement, along with accompanying Notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. Joint Decl. ¶ 16. The Settlement Agreement was finalized and executed on June 9, 2025. *See* Ex. 1. Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members.

### D. The Settlement Terms

#### 1. The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as "all U.S. residents whose Private Information was compromised in the Data Incident disclosed by Defendant, on or about September 6, 2024." S.A. ¶ 1.41. Private Information includes, but is not limited to names, Social Security numbers, and driver's license or state identification card numbers, and any other types of sensitive information that Defendant may have collected and

maintained. *Id*. ¶ 1.29. All members of the Settlement Class that do not opt-out of the settlement shall be referred to as Settlement Class Members. *Id*. ¶¶ 1.41, 1.42.

The Settlement Class specifically excludes: (i) PLA, and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the presiding judge, and his or her staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge. The Settlement Class includes the "California Subclass" as defined in Plaintiffs' Second Amended Class Action Complaint. The Settlement Class consists of approximately 18,264 individuals. *Id*. ¶ 1.41.

## 2. Settlement Benefits

The Settlement establishes a $635,000 non-reversionary common fund (the "Qualified Settlement Fund" or "Settlement Fund") from which PLA will provide Settlement Class Members with timely benefits targeted at remediating the specific harms they claim to have suffered as a result of the Data Incident. S.A. ¶ 1.31. The benefits of the Settlement are available to all Settlement Class Members who submit a valid claim, with the exception of the payment listed below available only to those who were California residents at the time of the Data Incident, as follows:

### a. Compensation for Out-of-Pocket Losses

Settlement Class Members may receive compensation for up to $5,000 through submission of a valid and timely claim and supporting documentation for Out-of-Pocket Losses that are reasonably traceable to the Data Incident, including documented unreimbursed economic losses,

and documented fees for credit reports, credit monitoring, or other identity theft insurance products that were incurred as a result of the Data Incident. S.A. ¶¶ 1.27, 3.1.

### b.  Credit and Identity Monitoring Protections

In addition to reimbursement for Out-of-Pocket Losses, Plaintiffs negotiated for significant Credit and Identity Monitoring services to be made available for the Settlement Class. S.A. ¶ 3.2. All Settlement Class Members, including those who previously enrolled in the credit monitoring offered by Defendant when it first provided notice of the Data Incident, shall have the ability to make a claim for two years of one-bureau Credit and Identity Monitoring, which will include $1 million in identity theft insurance. *Id*.

### c.  Pro Rata Cash Payment

In addition to the aforementioned Out-of-Pocket Losses and Credit and Identity Monitoring, Settlement Class Members can also elect to make a claim for a Pro Rata Cash Payment estimated to be at least $50.00. S.A. ¶ 3.4. The Pro Rata Cash Payment amount per valid claim will be determined by the amount remaining in the Settlement Fund after deductions for Service Awards, Credit and Identity Monitoring, Costs of Settlement Administration, and Fee Award and Costs. *Id*. Submission for Pro Rata Cash Payment can be made on or before the Claims Deadline and, significantly, requires no additional documentation.

### d.  California Statutory Cash Payment

In addition to the Out-of-Pocket Losses, Pro Rata Cash Payment, and Credit and Identity Monitoring, Settlement Class Members who were residing in California on the date of the Data Incident can also elect to make a claim for an additional $50.00 California Statutory Cash Payment. S.A. ¶ 3.3. Submission for the $50.00 California Statutory Cash Payment can be made on or before the Claims Deadline and, like the Pro Rata Cash Payment, requires no additional documentation.

### e.   Equitable Relief

Separate from and in addition to the other Settlement Benefits described above, PLA agrees to implement or maintain additional data security measures and improvements. S.A. ¶ 3.11.

### f.   Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The Parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiffs' Service Awards until after they agreed on all material terms of relief to the Settlement Class. Joint Decl. ¶ 14. Through the Qualified Settlement Fund, PLA will pay (i) all Costs of Settlement Administration (including Notice to the Settlement Class); (ii) Class Counsel's Fee Award and Costs (including the costs of dispute resolution); (iii) Plaintiffs' Service Awards; (iv) approved Out-of-Pocket Loss Claims; (v) Credit and Identity Monitoring costs; (vi) California Statutory Cash Payments; and (vii) approved Pro Rata Cash Payments. S.A. ¶ 3.5. PLA will pay attorneys' fees no more than one-third (1/3) of the Settlement Fund, or $211,666.67, plus litigation expenses not to exceed $20,000.00, in addition to the benefits provided to Settlement Class Members and the cost of Settlement administration. S.A. ¶ 9.2. Plaintiffs shall seek, and PLA has agreed to pay, $3,000 Service Awards to each Plaintiff ($9,000 total), subject to Court approval. S.A. ¶¶ 1.37, 9.1. Class Counsel will separately petition the Court for such attorneys' fees, costs and expenses, and Service Awards no later than 14 days prior to the objection deadline, unless the Court orders otherwise. *See id.* at 23 (Settlement Timeline).

### 3.   Notice to Class Members

To notify the Settlement Class, the Settlement outlines how the Settlement Administrator will collect Settlement Class Member information and execute the Notice Plan. To start, Atticus will create a Settlement Website where it will post all relevant documents relating to this case and the Settlement, including all forms needed to submit a claim. S.A. ¶¶ 1.44, 5.1(f); *see* Atticus Decl.

¶ 11. Additionally, because PLA has mailing addresses for Settlement Class Members, Atticus will engage in a direct mail campaign. Atticus Decl. ¶ 9. If Notice is returned "undeliverable," Atticus will skip trace the Settlement Class Member's address and mail notice at any address it finds through that process. *Id.* ¶ 10. Under the Settlement Agreement, the Settlement Administrator will start this process within 30 days after the Court preliminarily approves the settlement. S.A. ¶ 5.2.

### 4.  Claims, Objections, Opt-Outs, and Termination

Settlement Class Members will have 90 days from the day the Settlement Administrator notifies the Settlement Class to submit claims (the "Claims Deadline"). S.A. ¶ 1.8. This claims period will allow Settlement Class Members to recover for fraud, identity theft, and future Out-of-Pocket Losses (which is often the case when Private Information is stolen by cybercriminals). The Settlement Administrator will adjudicate all claims, including reviewing any documents a claimant attaches to support their claim. S.A. ¶¶ 3.6, 4.1-4.2. Settlement Class Members will have 30 days to address any defects identified by the Settlement Administrator, who will determine whether the Settlement Class Member has cured them. *Id*. ¶¶ 4.1-4.2.

Settlement Class Members may opt out from receiving the Settlement's benefits by sending written notice to the Settlement Administrator clearly manifesting their intent to be excluded from the Settlement Class. S.A. ¶¶ 6.1-6.2. Settlement Class Members opting out must notify the Settlement Administrator within 60 days from the day the notice program commences (the "Notice Date"). *Id*. ¶¶ 1.22, 1.26.

Settlement Class Members may also object to the Settlement within 60 days from the Notice Date (the "Objection Date"). S.A. ¶ 1.25. A timely written notice of their objection must be filed with the Court and must state the following: (i) the objector's full name, address, telephone number, and email address (if any); (ii) information identifying the objector as a Settlement Class

8

Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for their objection, accompanied by any legal support and evidence Class Member wishes to introduce; (iv) the identify all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (vi) a list of all Persons who they intend to call to testify at the Final Approval Hearing if applicable; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (viii) the objector's signature and that of their attorney. *Id.* ¶ 7.1.

### 5. Release

To receive the Settlement benefits, Plaintiffs and Settlement Class Members agree to release PLA for all claims and causes of action asserted or that could have been asserted by any Settlement Class Member based on, relating to, concerning or arising out of the Data Incident. S.A. ¶¶ 1.33, 8.1.

### III. ARGUMENT AND HISTORY

#### A. Class Action Settlement Approval Process

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993).

9

Plaintiffs ask the Court to take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. Because no class has been certified, "the judge should [also] make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." William B. Rubenstein, *Newberg on Class Actions* § 13:18 (5th ed. June 2019 update) (citation omitted). Judicial and public policy favors the resolution of disputes through settlement. *See ODonnell v. Harris Cty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Settlement Agreements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996)). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' motion and allow notice to be provided to the class.

### B. The Settlement Satisfies the Criteria for Preliminary Approval

At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2009 WL 10670041, at *6 (W.D. Tex. Jan. 8, 2009); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). The standards at the preliminary approval stage are not as stringent as those applied to a motion for

10

final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.*, 310 F.R.D. at 314-315.

On preliminary approval, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id*. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id*. 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit had developed its own factors— known as the *Reed* factors—for determining whether a settlement was fair, adequate, and reasonable, including: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiff prevailing on the merits; (5) the range of

11

possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *See Stott v. Cap. Fin. Servs. Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because Rule 23 and the *Reed* factors overlap, Fifth Circuit courts often combine them in analyzing class settlements. *See ODonnell*, 2019 WL 4224040, at *8 (citing *Hays v. Eaton Grp. Attorneys, LLC*, Civ. No. 17-88, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) (The Committee Notes to 2018 amendments state: "The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

The public interest strongly favors the voluntary settlement of class actions and there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *See Hays*, 2019 WL 427331, at *9; *In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012). A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." *ODonnell*, 2019 WL 4224040, at *7 (quoting 2 McLaughlin on Class Actions, § 6:7 (15th ed. 2018)). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

12

**1. The Settlement is the product of serious, informed, and arm's-length negotiations.**

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Settlement is the result of negotiations among experienced counsel and considerable assistance from a well-respected mediator. Joint Decl. ¶¶ 13-17, 23-34. In the weeks prior to mediation, the Parties exchanged key information to inform their strategies, including the number of breach victims and the changes made to its systems since the Data Incident. *Id.* ¶ 11. Although the Parties were unable to come to a settlement in principle on the day of mediation, soon thereafter, Judge Furgeson submitted a mediator's proposal that both Parties ultimately accepted. *Id.* ¶¶ 13-15. Throughout all negotiations, Settlement Class Counsel and counsel for PLA fought hard for the interests of their respective clients. *Id.* Additionally as explained above, Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. *Id.* ¶¶ 13-17, 23-34. These factors—the time and effort spent on the negotiations and the quantity and quality of information used during those negotiations—favor preliminary approval of the Settlement because they strongly indicate an absence of collusion in the final result.

**2. The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members.**

The benefits made available to Class Members through this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement establishes a non-reversionary common fund that ensures Settlement Class Members will be compensated for their Out-of-Pocket Losses resulting from fraud and identity theft and that every

13

Settlement Class Member who submits a valid claim will receive adequate compensation for their harms suffered because of the Data Incident. Moreover, Settlement Class Members are entitled to two additional years of Credit and Identity Monitoring, and to make a claim for an estimated $50.00 Pro Rata Cash Payment. *Id.* ¶¶ 3.2, 3.4. Qualifying Settlement Class Members are also entitled to a $50.00 California Statutory Cash Payment if they were residing in California on the day of the Data Incident. *Id.* ¶ 3.3. Finally, PLA has agreed to make and maintain improvements to its cybersecurity that will protect Settlement Class Members' Private Information that remains in its possession. *Id.* ¶ 3.11. These benefits are immediate and significant, and Class Counsel acknowledges that it is possible that the Class could receive nothing were the case litigated to trial. Joint Decl. ¶¶ 12, 19.

While plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See, e.g. In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same). Plaintiffs also recognize the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. To the best of Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. Rev. 1223, 1235 (2020). As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party. This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation.

14

The Settlement treats all Settlement Class Members fairly and equally. Each Settlement Class Member is entitled to file a claim to obtain settlement benefits. The total amount of the Settlement—which was the product of vigorous negotiations—is fair, reasonable and adequate in light of the risks the Plaintiffs and Settlement Class faced and the potential damages available.

## C.  Preliminary Certification of the Settlement Class is Appropriate

Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant*, No. 3:20-CV-3042, 2020 WL 5258454, at *4 (E.D. La. Sept. 2, 2020) (citing Fed. R. Civ. P 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

15

Indeed, courts have been certifying similar nationwide classes in data breach cases. *See, e.g., In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), reversed on other grounds, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems,* Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). This case should similarly be certified for settlement purposes only.

### 1.   The Settlement Class satisfies the requirements of Rule 23(a).

#### a.   Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class includes approximately 18,264 individuals, and thus clearly surpasses the threshold required to establish numerosity. S.A. ¶ 1.41. Thus, judicial economy would be well-served by certification.

#### b.   Commonality

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See*

16

*In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, 2020 WL 5258454, at *5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Plaintiffs here easily meet the commonality requirement because they can demonstrate numerous common issues exists. For example, whether PLA failed to adequately safeguard the records of Plaintiffs and Settlement Class members is a question common across the entire class. The adequacy of PLA's data security safeguards is common across the Settlement Class, and the safeguards applied to the data of one Settlement Class Member do not differ from those applied to another. Other common issues include but are not limited to:

- Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information;

- Whether Defendant was negligent in maintaining, protecting, and securing Private Information;

- Whether Defendant's Breach Notice was reasonable;

- Whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's Private Information; and

- Whether Defendant took reasonable measures to determine the extent of the Data Incident after discovering it.

*See generally*, Compl. These common questions, and others alleged in Plaintiffs' Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class wide basis. Plaintiffs thus have met the commonality requirement of Rule 23.

17

### c. Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Incident—and the cybersecurity protocols that PLA had (or did not have) in place to protect their data. Plaintiffs' claims are therefore typical of the Settlement Class Members'.

### d. Adequacy

To be adequate, Plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the Class Representatives and other Class Members; and (2) counsel and the Class Representatives are competent, willing, and able to protect the interests of absent Class Members. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiffs' interests are aligned with those of the Settlement Class because they all seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' Private Information were all allegedly compromised by PLA in the same manner. Moreover, the Settlement Agreement provides that Plaintiffs and Settlement Class Members are all eligible for the same reimbursement of Out-of-Pocket Losses, Pro Rata Cash Payment, Credit and Identity Monitoring services, as well as data-security enhancements. Plaintiffs and Settlement Class Members are also subject to the same qualifications for the California Statutory Cash Payment, which requires participating Settlement Class Members to have been resident in California on the day of the Data Incident. Though Plaintiffs will be seeking $3,000 Service Awards each ($9,000 total) for their efforts on

18

behalf of the Settlement Class, this amount is justified by the benefits brought to the Settlement Class by Plaintiffs.

Finally, Class Counsel has decades of combined experience litigating class actions, particularly in the data breach context. Class Counsel are particularly well-suited to advocate and litigate on behalf of the Class. *See* Joint Decl. *Id*. ¶¶ 17-22, 23-34. They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to Class Members. Thus, the requirements of Rule 23(a) are satisfied.

### 2. The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

### a. Predominance

First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether PLA had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class Members, and whether PLA breached that duty. The common questions that arise from PLA's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*,

19

327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *Hapka v. Carecentrix, Inc.*, Case No. 2:16-cv-02372, 2018 WL 1871449, at \*2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No.: 1:14-md-02583, 2016 WL 6902351, at \*2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

### b.  Superiority

Second, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the same Data Incident. Because the common questions of fact and law that arise from PLA's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

20

### D. The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement is designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions and Federal Rule of Civil Procedure 23. *See* S.A. Exs. B, D. Here, the Settlement provides for direct and individual Notice to be sent via U.S. First Class Mail to each Settlement Class Member. Atticus Decl. ¶ 9. In the event the Notice is returned as undeliverable, Atticus will perform a standard skip trace to ascertain the current address of the Settlement Class Member and resend Notice. *Id*. ¶ 10.

In addition to disseminating Notice via direct mail, the Settlement Administrator will establish the Settlement Website where all versions of the Notice will be available to Settlement Class Members, along with all relevant filings. S.A. ¶ 1.44; Atticus Decl. ¶ 11. Atticus will also make a toll-free telephone number available for any Settlement Class Member to seek answers to questions or request a Notice or Claim Form be mailed to their address. *Id*.

The Notices themselves are clear and straightforward. S.A. Exs. B, D. They define who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id*. The Notices disclose the essential terms of the Settlement Agreement, including

the Service Award requests for the Class Representatives and the amount Class Counsel intends to seek in fees, costs, and expenses. *Id*. The Notices explain the procedures for making claims, objecting, and requesting exclusion and provides Settlement Class Members with information that enables them to calculate their individual recovery. *Id*. Finally, the Notices alert the Settlement Class Members to the date, time, and place of the Final Approval Hearing and to the contact information for Class Counsel. *Id*.

The proposed direct mail Notice is the gold standard and is consistent with other Notice programs approved in the Fifth Circuit. *See Stott*, 277 F.R.D. at 342 (approving notice sent to class members by first class mail); *Billitteri v. Securities Am., Inc.*, Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217, at \*9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice provides Due Process under the U.S. and Texas Constitutions and complies with the Rule 23 requirements and should be approved by the Court. *See* U.S. Const., amend. XIV; Tex. Const., art. 1, § 19; Fed. R. Civ. P. 23(c)(2)(b) & (e)(1).

### E.  The Court Should Appoint the Settlement Administrator

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Atticus to serve as the Settlement Administrator. Atticus has a trusted and proven track record of supporting hundreds of class action administrations, with vast legal administration experience. *See* Joint Decl. ¶ 16.

### F.  The Court Should Appoint the Class Representatives

Plaintiffs should be provisionally appointed Class Representatives. As set forth above, they have represented the Settlement Class with no conflict of interest or antagonism between

themselves and other Class Members. Plaintiffs' Private Information, like that of the Settlement Class Members, was impacted in the same Data Incident. Accordingly, Plaintiffs have the same interests as Settlement Class Members generally. *See* Joint Decl. ¶ 12. Moreover, Plaintiffs have capably represented the class, including by assisting Class Counsel in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Class Counsel's many questions. *Id*. Finally, Plaintiffs have been informed about the nature of a class action and the potential advantages and disadvantages by proceeding in a class action rather than individually. *Id*.

### G. The Court Should Appoint Settlement Class Counsel

Plaintiffs request appointment of attorneys Terence R. Coates of Markovits, Stock & DeMarco, LLC, Raina Borrelli of Strauss Borrelli PLLC, and Daniel Srourian of Srourian Law Firm, P.C. as Class Counsel. Class Counsel have extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. *See* Joint Decl. ¶¶ 13-17, 23-34.

## IV.    CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiffs respectfully request that this Honorable Court enter an Order:

1) Preliminarily approving the Settlement;

2) Directing that Notice be disseminated to the Settlement Class Members in accordance with the Notice Program;

3) Appointing Atticus Administration, LLC as Settlement Administrator;

4) Approving the form and content of the Claim Form (Ex. A), Long Form Notice (Ex. B), and Short Form Notice (Ex. D), attached to the Settlement Agreement;

23

5) Appointing Allan Askrens, Robert L. Bennett, and Shawn Boschert as Class Representatives;

6) Appointing Terence R. Coates of Markovits, Stock & DeMarco, LLC, Raina Borrelli of Strauss Borrelli PLLC, and Daniel Srourian of Srourian Law Firm, P.C. as Class Counsel;

7) Scheduling a Final Approval Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiffs' Service Awards to be held at least 120 days after entry of the Preliminary Approval Order; and

8) Such other relief as the Court deems just and proper.

Dated: June 9, 2025                         Respectfully submitted,

                                            */s/ Terence R. Coates*
                                            Terence R. Coates (85579OH)
                                            **MARKOVITS, STOCK & DEMARCO, LLC**
                                            119 East Court Street, Suite 530
                                            Cincinnati, Ohio 45202
                                            Telephone: (513) 651-3700
                                            Facsimile: (513) 665-0219
                                            tcoates@msdlegal.com

                                            Joe Kendall
                                            Texas Bar No. 11260700
                                            **KENDALL LAW GROUP, PLLC**
                                            3811 Turtle Creek Blvd., Suite 1450
                                            Dallas, Texas 75219
                                            Phone: 214-744-3000
                                            Fax: 214-744-3015
                                            jkendall@kendalllawgroup.com

                                            Raina Borrelli (*pro hac vice*)
                                            **STRAUSS BORRELLI PLLC**
                                            980 N. Michigan Avenue, Suite 1610
                                            Chicago, IL 60611
                                            Phone: 872-263-1100
                                            Fax: 872-263-1109
                                            raina@straussborrelli.com

24

Daniel Srourian (*pro hac vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Drive, Suite 200
Beverly Hills, CA 90210
Phone: 213-474-3800
Fax: 213-474-4160
daniel@slfla.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I served the foregoing upon counsel of record for all parties by filing it with the court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

/s/ Terence R. Coates
Terence R. Coates (85579OH)

25