**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| **ALLAN ASKRENS, ROBERT L. BENNETT,** and **SHAWN BOSCHERT,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PALLET LOGISTICS OF AMERICA, LLC, d/b/a PLA,** <br><br> Defendant. | Case No. 3:25-cv-00008-S |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY ............................................1

III.  SUMMARY OF SETTLEMENT ........................................................................4

      A.    Settlement Class and California Settlement Subclass.............................4

      B.    Settlement Consideration .......................................................................4

            1.  Cash Payments .............................................................................5

                a.  Compensation for Out-of-Pocket Losses .........................5

                b.  Pro Rata Cash Payment.....................................................5

                c.  California Statutory Cash Payment....................................5

            2.  Credit and Identity Monitoring Protections .................................5

            3.  Business Practice Changes............................................................6

            4.  Service Awards, Attorneys' Fees, and Expenses...........................6

            5.  Funds Remaining After Distribution .............................................6

            6.  Release .........................................................................................7

IV.   NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS ................7

      A.    The Notice Program Satisfied Rule 23 and Due Process.........................7

      B.    Claims, Opt-Outs, and Objections ...........................................................9

V.    SETTLEMENT CLASS CERTIFICATION .....................................................10

VI.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...........11

      A.    Legal Standard for Final Approval .........................................................11

      B.    Plaintiffs and Counsel Have Adequately Represented the Class...........13

i

C.  The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations ...................................................................................14

D.  The Settlement Provides Substantial Relief to the Settlement Class Considering Rule 23(e)(2)(C)(i)–(iv) and the Second, Fourth, and Fifth *Reed* Factors ................................................................................15

E.  The Settlement Treats Settlement Class Members Equitably, Satisfying Rule 23(e)(2)(D) ......................................................................16

F.  The Remaining *Reed* Factors Further Support Final Approval ...........................16

VII.  CONCLUSION ..............................................................................................17

CERTIFICATE OF SERVICE ....................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) .................................................... 12

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ...................................................................................................... 16

*Billitteri v. Securities Am., Inc.*,
Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ................. 8

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .................................................................................................... 16

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) .............................................................................................. 17

*Feder v. Elec. Data. Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) ...................................................................................................... 13

*Hays v. Eaton Grp. Att'ys, LLC*,
No. 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ............................................................... 12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................................................... 13

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
910 F. Supp. 2d 891 (E.D. La. 2012) .......................................................................................... 12

*In re TD Ameritrade Acct. Holder Litig.*,
No. C 07-2852, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) .................................................. 15

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007) ................................................................................................ 15

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) ...................................................................................................... 14

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................................................ 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...................................................................................................................... 7

*ODonnell v. Harris Cnty. Texas*,
No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ...................................... 12, 13

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ........................................................................................................ 14

*Stott v. Cap. Fin. Servs. Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ................................................................................. 8, 12

*Welsh v. Navy Fed. Credit Union*,
   No. 5:16-CV-1062, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..................................... 17

**Statutes**

Cal. Civ. Code § 1798.150........................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23.......................................................................................................... 7, 12, 13

Fed. R. Civ. P. 23(a) ................................................................................................. 3, 10, 13, 17

Fed. R. Civ. P. 23(b)(3)............................................................................................. 3, 7, 10, 17

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................... 7

Fed. R. Civ. P. 23(e) ........................................................................................................ 7, 11, 12

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)........................................................................................... 11, 12, 17

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................... 10, 13, 14

Fed. R. Civ. P. 23(e)(2)(A)-(D) ........................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................. 15

Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv)................................................................................ 12, 15

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................. 16

Fed. R. Civ. P. 23(e)(3)..................................................................................................... 11, 12

Fed. R. Civ. P. 23(g)(1)...................................................................................................... 10, 17

Fed. R. Civ. P. 30(b)(6)....................................................................................................... 2

**Other Authorities**

2 *McLaughlin on Class Actions*, § 6:7 (15th ed. 2018) ............................................................. 13

iv

Max Meglio, *Embracing Insecurity: Harm Reduction Through A No-Fault Approach to Consumer Data Breach Litigation*,
61 B.C. L. Rev. 1223 (2020) .................................................................................................. 16

.

I.      INTRODUCTION

On June 18, 2025, this Court preliminarily approved the Settlement, adopting the Findings, Conclusions, and Recommendations of the United States Magistrate Judge to do so. Dkt. Nos. 32, 33, 34. The Settlement provides substantial Settlement Class Member Benefits for over eighteen thousand individuals via a non-reversionary Settlement Fund of $635,000.00, from which Settlement Class Members may elect to receive Cash Payments and/or Identity Monitoring. Settlement Agreement, Dkt. No. 33-1 ("S.A.") ¶ 11. The Settlement Fund will also be used to pay all Settlement Administration Costs, and any Court-awarded Service Awards, attorneys' fees, and expenses. *Id*. ¶ 2.3. The Settlement satisfies all Final Approval criteria. Currently, there are no objections or opt-outs from the Settlement Class. Declaration of Bryn Bridley Re Notice and Settlement Administration ("Admin. Decl."), attached as Exhibit 2, ¶ 11. This overwhelmingly positive response affirms the Court's initial conclusion, outlined in the Preliminary Approval Order, that the Settlement is fair, reasonable, and adequate. Class Counsel fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. Consequently, the Court should grant Final Approval of the Settlement and the Motion for Attorneys' Fees, Expenses, and Service Awards.

II.     BACKGROUND AND PROCEDURAL HISTORY

PLA "is a leading provider of recycled pallets and pallet-management services" headquartered in Dallas, Texas. See Second Amended Consolidated Class Action Complaint ("Compl.") ¶¶ 1,10. As a result, it collects and stores the personal information of thousands of its current, former, and prospective employees, including names, Social Security numbers, and driver's license or state identification card numbers (referred to as "Private Information"). *Id*. ¶¶ 2, 14-15; S.A. ¶ 1.29.

1

On September 6, 2024, PLA discovered that an unauthorized third party had accessed its computer network. Compl. ¶ 21. As a result of the Data Incident, the cybercriminals were able to access and acquire the Private Information of its current, former, and prospective employees. *Id*. Plaintiffs are former and/or prospective employees of PLA, as well as victims of this Data Incident. *Id*. ¶¶ 66-67, 69, 77-78, 80, 87-88, 90. PLA denies both these allegations and that Plaintiffs and Settlement Class Members are entitled to any relief.

Thereafter, commencing on November 21, 2024, with the filing of Plaintiff Askrens complaint, Pallet Logistics of America LLC d/b/a PLA, was named in 3 putative related actions. Dkt. No. 1. The actions were materially and substantively identical, had overlapping claims, sought to represent the same putative class members, and arose out of the same Data Incident. Joint Declaration of Class Counsel ("Joint Decl."), attached as Exhibit 1, ¶ 6. Plaintiffs in the related actions conferred and agreed to move to consolidate the related actions.

On April 29, 2025, Plaintiffs filed their Second Amended Consolidated Class Action Complaint, alleging causes of action for Negligence, Negligence Per Se, Breach of Implied Contract, Unjust Enrichment, Violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150, Declaratory Judgment, Dkt. No. 28.

Class Counsel prepared written discovery, including interrogatories, document requests, and a comprehensive Fed. R. Civ. P. 30(b)(6) notice. Joint Decl. ¶ 9. Class Counsel also consulted with multiple data liability and damage experts to understand how the breach occurred, the type of information involved, and whether the information was published on the Dark Web. *Id.*

In an effort to conserve resources for all concerned, the Parties then decided to focus their resources on exploring early resolution. Joint Decl. ¶ 10. On March 5, 2025, the Court issued a Mediation Order. Dkt. No. 22. Parties then scheduled a mediation with the Honorable W. Royal

Furgeson, Jr. (Ret.), an experienced data breach mediator. Joint Decl. ¶ *10.*

In advance of the mediation, Plaintiffs consulted with liability and damage experts to better understand how the Data Incident occurred and the injuries caused to the affected individuals. *Id.* ¶ 11. Plaintiffs also propounded informal discovery requests to learn as much as possible to prepare for the mediation, and PLA provided certain information in response to facilitate meaningful negotiations. *Id.* The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id.* The Parties mediated before Ret. United States District Judge Royal Furgeson for a full day on April 21, 2025. *Id.* ¶ 12. Although an agreement was not reached that day, they continued negotiating and following a mediator's proposal, the Parties agreed to the material terms of the Settlement disposing of all claims against the Defendant. *Id.*

Over several weeks, the Parties interviewed prospective Settlement Administrators and diligently drafted, negotiated, and finalized the Agreement, Notice Program, and Claim Process. *Id.* ¶ 13. The Agreement was signed on June 9, 2025, and Plaintiffs filed their unopposed Motion for Preliminary Approval the same day. *Id.*; Dkt. No. 33.

The Court entered its Preliminary Approval Order on June 18, 2025, preliminarily certifying the Action as a class action for Settlement purposes pursuant to Rule 23(a) and (b)(3), and finding that the Settlement Class should be certified. Dkt. No. 34. The Court did so after considering and adopting the detailed analysis of those factors in the Findings, Conclusions, and Recommendations of the United States Magistrate Judge. The Notice Program and Claim Process are ongoing in accordance with the Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 4-15.

### III.    SUMMARY OF SETTLEMENT

#### A.    Settlement Class and California Settlement Subclass

The Settlement Class and its California Settlement Subclass are defined as follows:

Settlement Class: All individuals residing in the United States whose Private Information was maintained on Defendant's computer systems that were compromised in the Data Breach discovered by Defendant in or about September 2024 (the "Class").

California Settlement Subclass: All individuals residing in California whose Private Information was maintained on Defendant's computer systems that were compromised in the Data Breach discovered by Defendant in or about September 2024 (the "California Subclass").

Compl. ¶¶ 99-100. Excluded from the Settlement Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. *Id.*

#### B.    Settlement Consideration

The non-reversionary all-cash $635,000.00 Qualified Settlement Fund shall be the sole source of monetary funds for all relief referenced below and shall be used by the Settlement Administrator to pay: (i) all Costs of Settlement Administration (including Notice to the Settlement Class); (ii) Class Counsel's Fee Award and Costs (including the costs of dispute resolution); (iii) Plaintiffs' Service Awards; (iv) approved Out-of-Pocket Loss Claims; (v) Credit and Identity Monitoring costs; (vi) California Statutory Cash Payments; and (vii) approved Pro Rata Cash Payments. S.A. ¶ 3.5.

**1. Cash Payments –** Settlement Class Members may elect:

**a. Compensation for Out-of-Pocket Losses.** Settlement Class Members may receive compensation for up to $5,000 through submission of a valid and timely claim and supporting documentation for Out-of-Pocket Losses that are reasonably traceable to the Data Incident, including documented unreimbursed economic losses, and documented fees for credit reports, credit monitoring, or other identity theft insurance product that were incurred as a result of the Data Incident. S.A. ¶¶ 1.27, 3.1.

**b. Pro Rata Cash Payment.** In addition to the aforementioned Out-of-Pocket Losses and Credit and Identity Monitoring, Settlement Class Members can also elect to make a claim for a Pro Rata Cash Payment estimated to be at least $50.00. S.A. ¶ 3.4. The Pro Rata Cash Payment amount per valid claim will be determined by the amount remaining in the Settlement Fund after deductions for Service Awards, Credit and Identity Monitoring, Costs of Settlement Administration, and Fee Award and Costs. *Id.* Submission for Pro Rata Cash Payment can be made on or before the Claims Deadline and, significantly, requires no additional documentation. *Id.*

**c. California Statutory Cash Payment**

In addition to the Out-of-Pocket Losses, Pro Rata Cash Payment, and Credit and Identity Monitoring, Settlement Class Members who were residing in California on the date of the Data Incident can also elect to make a claim for an additional $50.00 California Statutory Cash Payment. S.A. ¶ 3.3. Submission for the $50.00 California Statutory Cash Payment can be made on or before the Claims Deadline and, like the Pro Rata Cash Payment, requires no additional documentation. *Id.*

**2. Credit and Identity Monitoring Protections –** In addition to the cash payments, Plaintiffs negotiated for significant Credit and Identity Monitoring services to be made available

for the Settlement Class. S.A. ¶ 3.2. All Settlement Class Members, including those who previously enrolled in the credit monitoring offered by Defendant when it first provided notice of the Data Incident, shall have the ability to make a claim for two years of one-bureau Credit and Identity Monitoring, which will include $1 million in identity theft insurance. *Id.*

**3. Business Practice Changes –** Separate from and in addition to the other Settlement Benefits described above, PLA agrees to implement or maintain additional data security measures and improvements. S.A. ¶ 3.11. PLA agrees to provide written confirmation to Class Counsel of business practices changes taken after the Data Incident to protect the data security of the Class Representatives and the Settlement Class. *Id.* Costs associated with these business practice changes shall be paid by PLA separate and apart from the Settlement Amount. *Id.*

**4. Service Awards, Attorneys' Fees, and Expenses** – The Agreement calls for reasonable Service Awards for the Class Representatives of up to $3,000.00 each. S.A. ¶ 9.1. The awards are meant to compensate Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation and answering questions, maintaining contact with Class Counsel, reviewing case documents, and being prepared to assist with discovery. Joint Decl. ¶ 36. As explained in the Agreement and the Notice to the Settlement Class, Class Counsel also seek an attorneys' fees award not to exceed one-third of the Settlement Fund ($209,550.00), plus reimbursement of litigation costs. Joint Decl. ¶ 38. Class Counsel negotiated attorneys' fees, costs, and Service Awards as part of the total Settlement Class Member Benefits only after agreeing to the Settlement's material terms. *Id.* To date, not a single Settlement Class Member objects to the amounts sought. Admin. Decl. ¶ 11.

**5. Funds Remaining After Distribution** – The Settlement will exhaust the Settlement Fund. If any funds remain in the Qualified Settlement Fund after settlement payments have been

distributed and the time for cashing and/or redeeming Settlement Payments has expired, the Residual Funds will be sent to one or more Non-Profit Residual Recipient, subject to Court approval.  S.A. ¶ 3.10.

**6. Release -** To receive the Settlement benefits, Plaintiffs and Settlement Class Members agree to release PLA for all claims and causes of action asserted or that could have been asserted by any Settlement Class Member based on, relating to, concerning or arising out of the Data Incident. S.A. ¶¶ 1.33, 8.1.

## IV.  NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

### A.  The Notice Program Satisfied Rule 23 and Due Process

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Notice provided for by the Settlement is designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions and Federal Rule of Civil Procedure 23. *See* S.A., Exs. B, D. Here, the Settlement provides for direct and individual Notice to be sent via U.S. First Class Mail to each Settlement Class Member. Admin. Decl. ¶ 6. In the event the Notice is returned as undeliverable, Atticus performed a standard skip trace to ascertain the current address of the Settlement Class Member and resend Notice. *Id*. ¶ 7.

In addition to disseminating Notice via direct mail, the Settlement Administrator established the Settlement Website where all versions of the Notice are available to Settlement Class Members, along with all relevant filings. S.A. ¶ 1.44; Admin. Decl. ¶ 8. Atticus also established a toll-free telephone number that is available for any Settlement Class Member to seek answers to questions or request a Notice or Claim Form be mailed to their address. Admin. Decl. ¶ 10. The Notices themselves are clear and straightforward. S.A. Exs. B, D. They define who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id*. The Notices disclose the essential terms of the Settlement Agreement, including the Service Award requests for the Class Representatives and the amount Class Counsel intends to seek in fees and expenses. *Id.* The Notices explain the procedures for making claims, objecting, and requesting exclusion and provides Settlement Class Members with information that enables them to calculate their individual recovery. *Id.* Finally, the Notices alerted the Settlement Class Members to the date, time, and place of the Final Approval Hearing and to the contact information for Class Counsel. *Id.*

The proposed direct mail Notice is the gold standard and is consistent with other Notice programs approved in the Fifth Circuit. *See Stott v. Cap. Fin. Servs. Inc.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to class members by first class mail); *Billitteri v. Securities Am., Inc.*, Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice was designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement.

Finally, the Atticus calculates that between Postcard Notice through the USPS and the Settlement Website, 93.33% of the Class received notice. *See* Admin. Decl. ¶ 7. This reach rate is

consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines,[1] which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[2] These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the United States Constitution's Due Process requirements.

### B.  Claims, Opt-Outs, and Objections

Settlement Class Members have 90 days from the day the Settlement Administrator notifies the Settlement Class to submit claims (the "Claims Deadline"). S.A. ¶ 1.8. This claims period allows Settlement Class Members to recover for fraud, identity theft, and future Out-of- Pocket Losses (which is often the case when Private Information is stolen by cybercriminals). The Settlement Administrator will adjudicate all claims, including reviewing any documents a claimant attaches to support their claim. S.A. ¶¶ 3.6, 4.1-4.2. Settlement Class Members will have 30 days to address any defects identified by the Settlement Administrator, who will determine whether the Settlement Class Member has cured them. *Id.* ¶¶ 4.1-4.2. Settlement Class Members may opt out from receiving the Settlement's benefits by sending written notice to the Settlement Administrator clearly manifesting their intent to be excluded from the Settlement Class. S.A. ¶¶ 6.1-6.2. Settlement Class Members opting out were to notify the Settlement Administrator within 60 days from the day the notice program commences (the "Notice Date"). *Id.* ¶¶ 1.22, 1.26.

Settlement Class Members were also permitted to object to the Settlement within 60 days from the Notice Date (the "Objection Date"). S.A. ¶ 1.25. A timely written notice of their objection

---

[1] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[2] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010), *available at* https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

must have been filed with the Court and must state the following: (i) the objector's full name, address, telephone number, and email address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for their objection, accompanied by any legal support and evidence Class Member wishes to introduce; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (vi) a list of all Persons who they intend to call to testify at the Final Approval Hearing if applicable; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (viii) the objector's signature and that of their attorney. *Id.* ¶ 7.1.

To date, 414 claims have been deemed valid for one (1) or more of the available benefit options. Admin. Decl. ¶ 14. The valid claims to date are comprised of 399 claims for Pro Rata Cash Payments and 110 claims for the additional California residence Pro Rata Cash Payments, eight (8) claims for Out-of-Pocket Losses totaling $21,241.95, and 177 claims for credit monitoring. *Id.*

## V.  SETTLEMENT CLASS CERTIFICATION

For settlement purposes only, the Court's Preliminary Approval Order preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Rule 23(a) and (b)(3), and that the Settlement Class should be certified. Dkt. No. 34. The Court appointed Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and Terence R. Coates of Markovits, Stock & DeMarco, LLC, Raina Borrelli of Strauss Borrelli PLLC, and Daniel Srourian of Srourian Law Firm, P.C. as Class Counsel pursuant to Rule

10

23(g)(1). The Court also appointed Atticus Administration, LLC as the Settlement Administrator and approved the Notice Program and Claim Process. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. Dkt. No. 33.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Legal Standard for Final Approval

To warrant approval under Rule 23(e) a proposed class action settlement must be "fair, reasonable and adequate," based on the following factors: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id.* at (A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

11

including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* at (C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit had developed its own factors known as the *Reed* factors—for determining whether a settlement was fair, adequate, and reasonable, including: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiff prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *See Stott*, 277 F.R.D. at 343.

Because Rule 23 and the *Reed* factors overlap, Fifth Circuit courts "often combine them in analyzing class settlements." *ODonnell v. Harris Cnty. Texas*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citing *Hays v. Eaton Grp. Att'ys, LLC*, No. 17-88, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2) (The Committee Notes to 2018 amendments state: "The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

The public interest strongly favors the voluntary settlement of class actions and there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *See Hays,* 2019 WL 427331, at *8 (citing *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)). A proposed settlement "will be preliminarily approved

unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." *ODonnell*, 2019 WL 4224040, at *7 (quoting 2 *McLaughlin on Class Actions*, § 6:7 (15th ed. 2018)). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

### B.    Plaintiffs and Counsel have Adequately Represented the Class

As with Rule 23(a) adequacy of representation requirement, to satisfy Rule 23(e)(2)(A) Plaintiffs must establish (1) there is no antagonism or conflict of interest between the Class Representatives and other members of the Settlement Class; and (2) Class Counsel and Class Representatives are competent, willing, and able to protect the interests of absent Settlement Class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, all Settlement Class members and the Class Representatives are potentially affected by the same Data Incident, and thus have common interests. Joint Decl. ¶ 37. Moreover, Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents. Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. *Id*. To do so, they relied on their extensive experience in data breach litigation, their detailed investigation of this Action, and informal discovery exchanged in connection with Settlement negotiations. *Id*. This weighs in favor of Final Approval. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055-56 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience

representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). As such, Rule 23(e)(2)(A) supports Final Approval.

### C.    The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("One may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining[.]"). The Settlement is the result of negotiations among experienced counsel and considerable assistance from a well-respected mediator. Joint Decl. ¶¶ 20, 33. In the weeks before mediation, the Parties exchanged key information to inform their strategies, including the number of breach victims and the changes made to its systems since the Data Incident. *Id.* ¶ 11.

Although the Parties were unable to come to a settlement in principle on the day of mediation, soon thereafter, Judge Furgeson submitted a mediator's proposal that both Parties ultimately accepted. *Id.* ¶¶ 10-12; *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of an experienced and well-known mediator is a strong indicator of procedural fairness.") (Internal citations and quotations omitted). Throughout all negotiations, Settlement Class Counsel and counsel for PLA fought hard for the interests of their respective clients. *Id.* Additionally, as explained above, Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. *Id.* ¶¶ 20-22. These factors—the time and effort spent on the negotiations and the quantity and quality of information used during those negotiations—favor preliminary approval of the Settlement because

they strongly indicate an absence of collusion in the final result.

  **D.  The Settlement Provides Substantial Relief to the Settlement Class Considering Rule 23(e)(2)(C)(i)–(iv) and the Second, Fourth, and Fifth *Reed* Factors**

  The third and most important Rule 23(e)(2)(C) factor weighs heavily in favor of granting Final Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). This Settlement establishes a non-reversionary common fund that ensures Settlement Class Members will be compensated for their Out-of-Pocket Losses resulting from fraud and identity theft and that every Settlement Class Member who submits a valid claim will receive adequate compensation for their harms suffered because of the Data Incident. S.A. ¶ 3.1. Moreover, Settlement Class Members are entitled to two additional years of Credit and Identity Monitoring, and to make a claim for an estimated $50.00 Pro Rata Cash Payment. S.A. ¶¶ 3.2, 3.4. Qualifying Settlement Class Members are also entitled to a $50.00 California Statutory Cash Payment if they were residing in California on the day of the Data Incident. *Id.* ¶ 3.3. Finally, PLA has agreed to make and maintain improvements to its cybersecurity that will protect Settlement Class Members' Private Information that remains in its possession. *Id.* ¶ 3.11.

  These benefits are immediate and significant, and Class Counsel acknowledges that it is possible that the Class could receive nothing were the case litigated to trial. Joint Decl. ¶¶ 23. While plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See, e.g. In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (declining to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV-03-0185, Slip

15

Op. at 5-6 (D. Ariz. June 10, 2008) (same).

Plaintiffs also recognize the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. To the best of Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, *Embracing Insecurity: Harm Reduction Through A No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. Rev. 1223, 1235 (2020). As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party. This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation.

### E. The Settlement Treats Settlement Class Members Equitably, Satisfying Rule 23(e)(2)(D)

The Settlement treats all Settlement Class Members fairly and equally. Each Settlement Class Member is entitled to file a claim to obtain settlement benefits. The total amount of the Settlement—which was the product of vigorous negotiations—is fair, reasonable and adequate in light of the risks the Plaintiffs and Settlement Class faced and the potential damages available.

### F. The Remaining *Reed* Factors Further Support Final Approval

Beginning with the third *Reed* factor (the stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties, months of litigation, and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Joint Decl. ¶¶ 11, 33. Importantly, where the parties "possess ample information with which to evaluate the merits of competing positions[,]" a lack of formal discovery will not prevent settlement approval. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *see also Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977). As to the sixth *Reed* factor (opinions of class counsel, class representatives, and absent class members), there is no antagonism to the Settlement. Joint Decl. ¶¶ 22, 32-34, 36; Admin.

16

Decl. ¶ 11. Plaintiffs approve of the Settlement's terms, as do Class Counsel, based on their deep experience litigating data privacy class actions and other complex litigation. Joint Decl. ¶¶ 22. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight[]" when "evaluating a proposed settlement[.]" *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 648-49 (N.D. Tex. 2010), *as modified* (June 14, 2010), *judgment entered* (June 18, 2010), *enforcement denied*, No. 7:03-CV-102-D, 2011 WL 2413318 (N.D. Tex. June 15, 2011) (citations omitted); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims) (citations omitted); *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062, 2018 WL 7283639, at *14 (W.D. Tex. Aug. 20, 2018) (same).

As of October 8, 2025, there are no objections or opt-outs to the Settlement, evidencing the Settlement Class's positive reaction. Admin Decl. ¶ 11. If any objections subsequently are filed, Class Counsel will respond to them at the Final Approval Hearing. Accordingly, with all Rule 23(e)(2) and *Reed* factors demonstrating the Settlement is fair, reasonable, and adequate, the Court should grant Final Approval.

## VII.   CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter a Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Terence R. Coates of Markovits, Stock & DeMarco, LLC, Raina Borrelli of Strauss Borrelli PLLC, and Daniel Srourian of Srourian Law Firm, P.C. as Class Counsel pursuant to Rule 23(g)(1); (5) confirming the appointment of

Atticus as Settlement Administrator; and (6) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as Exhibit 3, updating the form that is an exhibit to the Agreement.

Dated: October 14, 2025

*s/ Terence R. Coates*
Terence R. Coates (85579OH)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Phone: 214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

Raina Borrelli (*pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Phone: 872-263-1100
Fax: 872-263-1109
raina@straussborrelli.com

Daniel Srourian, Esq. (*pro hac vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
daniel@slfla.com

*Attorneys for Plaintiffs*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, I served the foregoing document upon all parties by their counsel of record by filing it with the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*s/ Terence R. Coates*
Terence R. Coates (85579OH)

19